1
2
3
4
5
6
7
8       **UNITED STATES DISTRICT COURT**
9       **SOUTHERN DISTRICT OF CALIFORNIA**
10
11      THERESA BROOKE,                              Case No.:  3:20-cv-00975-W-AHG
12                              Plaintiff,
                                                     **ORDER DENYING DEFENDANTS'**
13      v.                                           **MOTION TO DISMISS**
                                                     **PLAINTIFF'S VERIFIED**
14      8757 RIO SAN DIEGO MISSION                   **AMENDED COMPLAINT [DOC. 9]**
        VALLEY OWNER LLC,
15
                                Defendant.
16
17
18
19

20          Plaintiff Theresa Brooke brings this action against Defendant 8757 Rio San Diego
21   Mission Valley Owner LLC.  Defendants now move to dismiss Plaintiff's First Amended
22   Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(1), arguing that Brooke
23   lacks standing.  Plaintiff opposes.
24          The Court decides the matter on the papers submitted and without oral argument.
25   See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **DENIES** Defendants'
26   motion [Doc. 9].
27   //
28   //

1

I.    **BACKGROUND**

Plaintiff Theresa Brooke is legally disabled and confined to a wheel chair. (*Amend. Compl.* [Doc. 4] ¶ 1.)  Brooke and her husband reside in Pinal County, Arizona and have an office in San Jose, California for purposes of ADA-related testing and business.  (*Id.*)  They are also "avid travelers to California for purposes of leisure travel, court-related hearings, conferences and inspections, and to 'test' whether various hotels across the Country comply with disability access laws."  (*Id.*)  Defendant 8757 Rio San Diego Mission Valley Owner, LLC, owns and operates a hotel is San Diego, California doing business as the San Diego Marriott Mission Valley.  (*Id.* ¶ 2.)

"On or about May 24 through 25, Brooke and her husband visited San Diego for a quick weekend trip and to engage in ADA testing at various hotels in San Diego area." (*Amend. Compl.* ¶ 8.)  Defendant's property was one of the hotels Brooke and her husband visited.  (*Id.* ¶ 9.)  Brooke alleges that when she stopped at the passenger loading zone directly in front of the lobby, she could not access the lobby "because the passenger loading zone did not have an access aisle that complies with Section 503 of the" 2010 Standards of Accessible Design.  (*Id.* ¶¶ 9, 10.)  Specifically, she alleges that while at the lobby loading zone, there were "encumbrances (vehicles) and other persons stationed where the access aisle should have been thereby blocking the area where the access aisle would generally provide [Brooke] with a clear path to the lobby from the lobby loading zone."  (*Id.* ¶ 10.)  Brooke further alleges an "access aisle is necessary to mark where other cars should not park thereby creating a clear path to the lobby from the passenger loading zone for a person in a wheelchair."  (*Id.* ¶ 11.)

Brooke alleges she was deterred by the inability to access the lobby from the passenger loading zone and did not book a room.  (*Amend. Compl.* ¶ 13.)  She further alleges she is deterred from visiting Defendant's hotel "in the future until and unless Defendant remedies the barrier referenced above."  (*Id.* ¶¶ 14.)  However, she has made a reservation to stay at the hotel in late August, but will cancel the reservation if Defendant does not remedy the barrier.  (*Id.* ¶¶ 15, 16.)

On May 26, 2020, Brooke filed this lawsuit against Defendant, alleging causes of action for violations of the Americans with Disabilities Act ("ADA"), and the California Unruh Civil Rights Act.  (*See Compl.* [Doc. 1].)  Defendant, thereafter filed a motion to dismiss, and on June 18, 2020, Brooke filed the Verified Amended Complaint. Defendant now moves to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1).

## II.  **LEGAL STANDARD**

"[A]s with other civil rights statutes, to invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination [under the ADA] must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation."  Chapman v. Pier 1 Imports (U.S.) Inc., 631 F.3d 939, 946 (9th Cir. 2011) (citations omitted).  To do so, "a plaintiff needs to provide only 'a short and plain statement of the grounds for the court's jurisdiction.'  The plaintiff must allege facts, not mere legal conclusions, in compliance with the pleading standards established by Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).  Assuming compliance with those standards, the plaintiff's factual allegations will ordinarily be accepted as true unless challenged by the defendant."  Leite v. Crane Co., 749 F.3d 1117, 1121 (9th Cir. 2014) (citations omitted).

A defendant may move to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1).  White v. Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction."  Id. at 1039.  "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the

allegations are sufficient as a legal matter to invoke the court's jurisdiction." Leite, 749 F.3d at 1121 (citation omitted).  On a 12(b)(1) motion, "the plaintiff has the burden of proving jurisdiction in order to survive the motion."  Kingman Reef Atoll Investments, L.L.C. v. United States, 541 F.3d 1189, 1197 (9th Cir. 2008) (citation omitted).

Standing requires: "(1) an 'injury in fact' suffered by the plaintiff; (2) a causal connection between the injury and the defendant's conduct; and (3) a likelihood that the injury will be 'redressed by a favorable decision.'"  Civil Rights Educ. and Enforcement Center v. Hospitality Properties Trust, 867 F.3d 1093, 1098 (9th Cir. 2017) ("CREEC") (citing Lujan v. Defs. of Wildlife, 504 U.S. 555, 560–61 (1992)).  "A plaintiff has sustained an injury in fact only if she can establish 'an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical."  Id. (citing Lujan, 504 U.S. at 560)).

Where the plaintiff seeks injunctive relief, "past exposure to illegal conduct does not itself show a present case or controversy."  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).  Rather, the plaintiff must allege "continuing, present adverse effects" stemming from defendant's actions.  Id.  Under the "deterrent effect doctrine", an ADA plaintiff satisfies this requirement if the "defendant's failure to comply with the ADA deters her from making use of the defendant's facility."  CREEC, 867 F.3d at 1098 (citing Chapman, 631 F.3d at 953).

## III.   DISCUSSION

### A.   Standing

Because Defendant does not offer evidence in support of its motion, Defendant's challenge is a facial attack.  Brooke v. H.P. Hospitality, LLC, 2017 WL 4586349, *2 (C.D.Cal. July 11, 2017).  Thus, "the court is required to accept as true all factual allegations set forth in the complaint, to the extent that all such allegations are not contradicted by the documents incorporated by reference."  Id. (citing Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Additionally, in

evaluating Defendant's challenge, this court is mindful that "[c]ourts are to take a 'broad view of constitutional standing in civil rights cases, especially where, as under the ADA, private enforcement suits are the primary method of obtaining compliance with the Act.'" Id. at *3 (citing Doran v. 7–Eleven, Inc., 524 F.3d 1034, 1039 (9th Cir. 2008) (internal quotation marks and citation omitted)).

Defendant raises several arguments as to why Brooke lacks standing.  First, it contends Brooke cannot show an injury in fact.  (P&A [Doc. 9-1] 13:6–7.)  In support of this argument, Defendant contends that Brooke "does not allege that she visited the Hotel, or that she actually encountered any actual barriers."  (Id. 14:16–17.)  This argument lacks merit.

Brooke explicitly alleges that during her trip to San Diego on approximately May 24, "she visited Defendant's hotel and stopped at Defendant's passenger loading zone directly in front of the lobby."  (Amend. Compl. ¶ 9.)  She further alleges she could not access the "lobby because the passenger loading zone did not have an access aisle that complies with Section 503 of the" 2010 Standards of Accessible Design.  (Id.)  Thus, contrary to Defendant's argument, Brooke clearly alleges she visited the Hotel and encountered a barrier.

Defendant next contends that even if Brooke "plausibly allege barriers to accessibility … the Amended Complaint still fails to allege how any of the purported barriers relate to Plaintiff's specific disability."  (P&A 14:24–27.)  But Brooke alleges that she is confined to a wheel chair; that when she was stopped at the hotel's passenger loading zone, there were vehicle and other persons stationed where the access aisle should have been; and as a result, her "path to the lobby from the lobby loading zone" was blocked.  (Amend. Compl. ¶ 10.)  From these allegations, it is reasonable to infer that Brooke could not maneuver her wheelchair through the required access aisle because it was blocked by the vehicles Defendant permitted to park in the area.  Accordingly, the Court finds Brooke has sufficient alleged an injury that is causally related to her disability.

1

2      Defendant next argues that Brooke lacks standing because she cannot show a threat

3  of repeated injury.  (*P&A* 16:7–22:27.)  In support of this theory, Defendant urges the

4  Court the evaluate the following four factors: (1) the proximity of Defendant's hotel to

5  Brooke's residence; (2) her past patronage of Defendant's hotel; (3) the definitiveness of

6  her plans to return; and (4) her frequency of travel near Defendant's travel.  (*Id.* 17:2–7.)

7  The Court is not persuaded by Defendant's argument for two reasons.

8      First, Defendant is necessarily asking the Court to reject Brooke's allegation in her

9  Verified Amended Complaint that she made a reservation to stay at the hotel in August

10  and thus there exists a threat of repeated injury.  (*Amend. Compl.* ¶ 15.)  On a facial

11  challenge, her allegation must be accepted as true unless contradicted by documents or

12  other allegations in her complaint.  Because Defendant has not cited any allegation or

13  documents that contradicts her allegation, this Court must accept the fact as true.

14      Compounding the problem with Defendant's attempt to dispute Brooke's

15  allegation is that Defendant's evaluation of the four factors is largely based on conjecture

16  and speculation.  For example, Defendant offers no support for its assertion that Brooke

17  has not previously stayed at the hotel (*P&A* 17:18–18:17) and has not previously

18  travelled near the hotel (22:5–27).  Under these circumstances, it would be improper to

19  ignore Brooke's verified allegation because of Defendant's conjecture.  Indeed, the case

20  Defendant cites for the proposition that the Court may evaluate the four factors at this

21  stage of the litigation, Johnson v. Overlook At Blue Ravine, LLC, 2012 WL 2993890

22  (E.D.Cal. July 12, 2012), involved a summary-judgment motion and the court's finding

23  regarding plaintiff's past patronage of the public accommodation and plans to return were

24  based on evidence. Id. at *3–4.

25      Second, and perhaps more importantly, under CREEC, 867 F.3d 1093, Brooke has

26  clearly alleged an injury in fact.  In CREEC, plaintiffs were physically disabled and used

27  wheelchairs for mobility.  They called hotels that were owned by defendant and provided

28  free shuttle services to hotel guests.  During the phone calls, the hotels informed plaintiffs

6

that the hotel "did not provide equivalent shuttle service for mobility-impaired people." Id. at 1097.

In the lawsuit that followed, plaintiffs alleged they would have stayed at each hotel called but for its failure to provide equivalent shuttle service, and plaintiffs also alleged they intended to stay at the hotel, but that each hotel's failure to provide equivalent shuttle service deterred plaintiffs from doing so at the present. Defendant challenged plaintiffs' standing, arguing they failed to satisfy the injury-in-fact requirement. Based on the allegations, the Ninth Circuit identified the "relevant question" was: "whether the Named Plaintiffs are presently deterred from visiting HPT-owned hotels." Id. at 1099. The Ninth Circuit answered the question in the affirmative:

> The Named Plaintiffs have alleged … that they intend to visit the relevant hotels, but have been deterred from doing so by the hotels' noncompliance with the ADA. They further allege that they will visit the hotels when the non-compliance is cured. Thus, the ADA violations have prevented them from staying at the hotels. Without such averments, they would lack standing. However, "construing the factual allegations in the complaint in favor of the plaintiffs, as we must at this preliminary stage, *Mont. Shooting Sports Ass'n v. Holder*, 727 F.3d 975, 979 (9th Cir. 2013), we conclude that the Named Plaintiffs have sufficiently alleged injury in fact. *Chapman*, 631 F.3d 953. Their harm is "concrete and particularized," and their intent to visit the hotels once they provide equivalent shuttle service for the disabled renders their harm "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130.

Id. at 1099.

The Ninth Circuit then addressed an argument similar to the one raised by Defendant in this case: that plaintiffs could not meet Article III's injury-in-fact requirement when they "do not intend to [visit the hotel] unless and until the alleged ADA violations are remedied." Id. at 1099. The court rejected the argument reasoning,

> plaintiff need not engage in a "futile gesture" to establish Title III standing if she is on notice that the establishment "does not intend to comply" with the ADA. 42 U.S.C. § 12188(a)(1). As we held in *Pickern*, "under the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or

7

patronizing that accommodation, the plaintiff has suffered an injury." 293
F.3d at 1136–37.  The injury continues so longs as equivalent access is
denied.  Thus, [defendant's] contention fails.

Id. at 1101.

Brooke's allegations relating to standing are arguably stronger than those the Ninth
Circuit found sufficient in CREEC. Unlike the CREEC plaintiffs who only telephoned
defendant's hotels, Brooke alleges she visited the hotel and personally observed the ADA
violation.  Additionally, while plaintiffs in CREEC alleged they would stay at
defendant's hotels if the violations were remediated, Brooke alleges she made a
reservation for August.  And Brooke, like the CREEC plaintiffs, alleged she is presently
deterred from staying at the hotel.  Based on these allegations, the Court finds Brooke has
sufficiently alleged she is deterred from returning to Defendant's hotel and has alleged an
injury in fact.

### B.    Supplemental Jurisdiction

Defendant argues the Court should decline to exercise supplemental jurisdiction
over Brooke's state-law cause of action for violation of the Unruh Act.  Under 28 U.S.C.
§ 1367(c), a federal court may decline to exercise supplemental jurisdiction under any of
the following circumstances: (1) the state law claim involves a novel or complex issue of
state law; (2) the state law claim substantially predominates over the federal claim; (3)
the federal claim has been dismissed; and (4) exceptional circumstances.  28 U.S.C. §
1367(c).

Here, Defendant argues the Court should decline supplemental jurisdiction because
(1) the state-law claim predominates over the ADA claim because damages are only
available under the Unruh Act and (2) interests of comity and discouraging forum
shopping constitute exceptional circumstances.  (P&A 28:4–31:6.)  The Court finds
neither argument persuasive and agrees with the district court's rejection of the same
arguments in Kohler v. Rednap, Inc., 794 F.Supp.2d 1091, 1095–1097 (C.D. Cal. 2011)

1    and <u>Schoors v. Seaport Village Operating Company, LLC</u>, 2017 WL 1807954, *4–5

2    (S.D.Cal. May 5, 2017).

3

4    **IV.    <u>CONCLUSION AND ORDER</u>**

5         For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss

6    [Doc. 9].

7         **IT IS SO ORDERED.**

8    Dated:  February 18, 2021

9

10                                            Hon. Thomas J. Whelan

11                                            United States District Judge